IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

                Plaintiff,

vs.                                  Case No. 18-3295-SAC

MICHELLE TIPPIE, et al.,

                Defendants.

**O R D E R**

This case is before the court for screening of plaintiff's amended complaint. Doc. No. 10. The court applies the same standards discussed in the court's order screening plaintiff's original complaint. Doc. No. 6. The court shall also rule upon motions listed as pending.

I. SCREENING AMENDED COMPLAINT

    A. Count One

In Count One plaintiff alleges that he was housed for five days in a cell where exhaust entering from the ventilation system caused plaintiff to suffer symptoms associated with carbon monoxide poisoning. Plaintiff has asthma which he asserts made him more susceptible to the health risks. He claims he had severe headaches and chest pain, and that he required a breathing treatment. Plaintiff claims that defendant Tippie was aware of this situation but refused plaintiff's requests to be moved to

1

another cell.  The court finds that plaintiff's additional allegations in the amended complaint are sufficient to describe an extreme condition which caused a substantial risk to plaintiff's health and, therefore, state a claim for relief against defendant Tippie.

    B. <u>Count Two</u>

Plaintiff alleges that the inmates' meals were reduced perhaps to less than 1,700 calories for two to four days in retaliation against some inmates' filing grievances concerning the food. Plaintiff asserts that before the rations were reduced, defendant Tippie responded to complaints by saying that the required amount of calories were being served and could be cut down.  He claims that he was starving and his stomach hurt because he was suffering from an inadequate diet before the alleged retaliation.

The court reviewed the standards governing this claim in the prior screening order.  Applying those standards to the allegations in the amended complaint, the court finds that Count Two fails to state a claim.

    C. <u>Count Three</u>

Plaintiff alleges that from November 28, 2018 to December 2, 2018, the heater to his housing pod was broken and that he suffered from cold temperatures without having access to a jacket or gloves or an extra blanket.  Plaintiff alleges he only had one sheet and

2

one blanket until December 2, 2018, when an extra blanket was provided.

Plaintiff further alleges that he was placed in a segregation cell on December 21, 2018 where the temperatures were 50 degrees or below. Plaintiff was denied an extra blanket and was shivering at night in his clothes for a week's time before receiving an extra blanket.

Plaintiff alleges that defendant Tippie was aware of these temperature conditions and denied plaintiff extra blankets or other means to maintain warmth.

Mindful of the court's legal discussion in the prior screening order, the court finds these allegations are sufficient to state a claim for relief against defendant Tippie.

D. Count Four

In the court's first screening order, plaintiff was directed to show cause why the court should not require him to seek to supplement his claims in Case No. 18-3092 with the allegations in Count Four as opposed to bringing a new claim in this case. Plaintiff asks that the court permit the claim to go forward because it involves a separate incident from the allegations in Case No. 18-3092. The court shall not dismiss Count Four as duplicative and shall permit the claim to proceed.

Although it is somewhat unclear, plaintiff appears to allege that he was not permitted Jehovah's Witnesses church services or

3

any other services on Sunday October 14, 2018 and that he was denied services again on Sunday October 21, 2018. He claims he was not allowed services for those two weeks, and then required to attend services alone. Plaintiff claims there was no penological goal or interest for denying plaintiff religious services because the purported goal, to keep plaintiff separated from an "incompatible", was not relevant since the "incompatible" did not attend church services.

To state a claim for denial of the constitutional right to freely exercise one's religion, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). "[M]ere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden." Bell v. English, 2019 WL 174982 *7 (D.Kan. 1/11/2019).

The Tenth Circuit reversed the dismissal of an in forma pauperis complaint in McKinley v. Maddox, 493 Fed.Appx. 928 (10th Cir. 2012) holding that the plaintiff alleged a substantial burden when he claimed he was intentionally denied the right to attend all church services either offsite or onsite at his correctional center for a period of a month.[1] The court is aware of other

---

[1] The plaintiff in McKinley was housed at a community corrections center and had the freedom upon approval to leave the center to engage in various activities.

4

authority outside the Tenth Circuit holding that the denial of religious services on two weekly occasions was not a substantial burden upon the free exercise of religion. See Powell v. City of New York, 2016 WL 4159897 *5 (S.D.N.Y. 7/14/2016)(reviewing other cases).

As the court has noted previously with regard to a similar claim raised by plaintiff in Case No. 18-4092, Doc. No. 31 at p. 7, there are several factors which a court needs to consider before reaching a final conclusion regarding plaintiff's claim:

> First, the court considers whether there is a logical connection between the prison regulation and the asserted penological interest. Second, the court considers whether alternative means of exercising the religious right in question remain open to inmates. Third, the court assesses the impact the accommodation of the right in question would have on guards, other inmates, and on the allocation of prison resources. Fourth, the court considers whether any policy alternatives exist that would accommodate the right in question at de minimis cost to the prison.

Wares v. Simmons, 392 F.3d 1141, 1143 (10th Cir. 2004)(quoting Hammons v. Saffle, 348 F.3d 1250, 1254-5 (10th Cir. 2003)).

At this stage, the court finds that plaintiff's allegations are sufficient to permit his claim in Count Four to go forward against defendants Tippie and McAfee.

E. Count Five

The amended complaint in Count Five contains different allegations than Count Five in the original complaint. In the amended complaint plaintiff alleges that for three days the water was turned off to his segregation cell so that his toilet would not flush. Doc. No. 10, p. 11. He claims that "prison officials" knew the water was off and refused to turn it on so that plaintiff could flush his toilet. Id. Plaintiff claims that he had to sit in his cell for three days in February with a "horrible and rancid smell" from the toilet. Id. at p. 12. His allegations indicate that normally the water was turned on once a day. Id.

Plaintiff does not allege how long he was confined in his cell during the three days in question. He does not allege that he suffered injury or harm because of the conditions of his confinement. He does not allege that any other inmates shared the toilet in the cell. Nor does he allege how many hours the water to his toilet was off. Under these circumstances, the court shall hold that plaintiff has failed to allege a plausible claim for relief. In support of this holding, the court notes that in Purkey v. McKune, 2004 WL 2413455 *4 (D.Kan. 10/26/2004) and 2005 WL 61497 *4 (D.Kan. 1/11/2005), the court held upon a motion to dismiss and upon reconsideration that, where a prisoner alleged he was in a segregation cell in hot temperatures for three days without ventilation and without water to flush his cell's toilet which

6

omitted a strong and overpowering foul odor, the conditions were not sufficiently serious to violate the Eighth Amendment.

Further, plaintiff's allegations are inadequate to allege the personal participation of many defendants in the actions which caused the alleged unconstitutional conditions. Plaintiff claims that "Sgt. April McAfee, Disciplinary officer Thomas Degroot, Jailer Tyler Shifkowski, Jailer McDannels; Captain Michelle Tippie, Undersheriff Terry Clugston, Sheriff David Groves, [and] Bd. of Commissioners, are all responsible for my living conditions." Id. at p. 11. But, defendant Degroot is the only defendant who plaintiff specifically identifies as working the floor and knowing the water was off. The court concludes that plaintiff has failed to give the defendants except for defendant Degroot fair notice of the basis of the claims against them and has failed to allege facts plausibly demonstrating personal involvement on those defendants' part in causing the alleged constitutional violation. See Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 779 (10th Cir. 2013).

Plaintiff also alleges in Count Five that defendants McAfee, Shifkowski and Degroot fabricated part of a write up on plaintiff. Id. This is a conclusory claim of retaliation which fails to allege facts supporting a retaliation claim and fails to describe an injury of constitutional dimension.

7

For the above-stated reasons, the court shall direct that Count Five be dismissed without prejudice.

F. Individual, corporate and governmental defendants

The court directs that all defendants except defendants Tippie and McAfee be dismissed from this case. Consistent with the court's discussion in this order and the prior screening order, the court finds that plaintiff has failed allege a constitutional violation in which the other defendants have personally participated. Plaintiff's claims of inadequate training are also conclusory and fail to plausibly demonstrate a causal link to a constitutional violation. See Connick v. Thompson, 563 U.S. 51, 70 (2011); Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998).

The court notes that although the amended complaint mentions injunctive relief, plaintiff does not describe a request for injunctive relief which might apply against any defendant in an official capacity or personal capacity.

II. PENDING MOTIONS

The court shall grant plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 2) consistent the screening orders in this case and the order entered at Doc. No. 5.

The court shall consider plaintiff's motion to amend (Doc. No. 7) as moot because plaintiff filed an amended complaint (Doc. No. 10) in response to the court's first screening order.

The court shall deny plaintiff's motion to compel (Doc. No. 8) without prejudice as premature.

Finally, the court notes that Doc. No. 9 is docketed as a response to the court's screening order, but it is titled a "motion not to dismiss complaint." The court will not treat this document as a motion, but the court has considered the arguments in Doc. No. 9 in making the rulings in this order.

III. CONCLUSION

In conclusion, the court directs that Counts Two and Five be dismissed. The court further directs that all defendants except defendants Tippie and McAfee be dismissed. Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 2) is granted consistent with the screening orders in this case and the order entered at Doc. No. 5. Plaintiff's motion to compel (Doc. No. 8) is denied without prejudice as premature. Plaintiff's motion to amend (Doc. No. 7) is considered moot. The court further directs that the Clerk of the Court prepare and issue waiver of service forms for Michelle Tippie and April McAfee.

**IT IS SO ORDERED.**

Dated this 25th day of March, 2019, at Topeka, Kansas.

s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge